IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

LAWRENCE RUSSELL,

        Petitioner,

  -v-                                  17-CR-40-V
                                            18-CR-105-V

UNITED STATES OF AMERICA,

        Respondent.

---

## GOVERNMENT'S ANSWER TO DEFENDANT'S MOTION TO VACATE AND FOR RELIEF UNDER 28 U.S.C. § 2255

THE UNITED STATES OF AMERICA, by and through its attorney, James P. Kennedy, Jr., United States Attorney, Western District of New York, Laura A. Higgins, Assistant United States Attorney, of counsel, hereby files its Response to the Defendant-Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, requesting this Court deny the relief sought therein.

    28 U.S.C. § 2255 provides, in relevant part, as follows:

a.    A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

b.    Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and

> conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a) and (b). The Court may dismiss a § 2255 petition without conducting a hearing if the petition and the record "conclusively show" that petitioner is not entitled to relief. Id. As is more fully set forth below, Russell's arguments and submissions do not merit an evidentiary hearing. Also, for the reasons set forth below, Russell's motion is without merit, both factually and legally, and should be denied.

## PROCEDURAL HISTORY

On July 26, 2018, Petitioner pled guilty before the Honorable Lawrence J. Vilardo, United States District Court, to Count 1 of Indictment 17-CR-40-V for a violation of Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of cocaine and 38 grams or more of cocaine base), and Count 1 of Indictment 18-CR-105-V for a violation of Title 18, United States Code, Section 3146(a)(1) (failure to appear after pre-trial release). Docket 89.[1] As part of the Plea Agreement, Russell acknowledged that Sentencing Guidelines § 2D1.1(b)(1) applied to his offenses of conviction and provided for a base offense level of 34. Id. at ¶ 8(a). The government and Russell then agreed that after accounting for his acceptance of responsibility "[his] sentencing range would be a term of imprisonment of 100 to 125 months, a fine of $25,000 to $5,000,000, and a period of supervised release of 4 to 5 years." Id. at ¶ 13. Russell and the government also agreed that although the parties "agree to the correctness of

---

[1] All docket entry citations herein will reference 17-CR-40 unless noted otherwise.

the calculation of the Sentencing Guidelines range and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set for in this agreement." Id. at ¶ 14.   Furthermore, Russell agreed to waive certain rights to appeal and collaterally attack any sentence imposed:

> 21.   The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence.  In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.
>
> 22.   The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

Plea Agreement ¶¶ 21-22.

On February 8, 2019, this Court sentenced Petitioner to a term of 84 months on Count 1 of Indictment 17-CR-40 and 24 months on Count 1 of Indictment 18-CR-105, to run consecutively, for an aggregate total of 108 months in the custody of the Bureau of Prisons, and 5 years of supervised release.  Docket 118.  The judgment of conviction was signed on February 25, 2019.  The judgment of conviction constitutes a final decision that disposes of all claims of the parties and is therefore subject to appeal under 28 U.S.C. § 1291.  No appeal was taken.

On August 23, 2019, the Petitioner filed a timely motion to vacate his sentence pursuant to Title 28, United States Code, Section 2255, contending that defense counsel

provided ineffective assistance for (1) failing to file a notice of appeal as the defendant alleges he directed, and (2) failing to object to the application of Guidelines § 2D1.1(b)(1) (possession of a dangerous weapon). Docket 132.

The government urges the Court to deny Akram's *pro se* motion for post-conviction relief pursuant to Title 28, United States Code, Section 2255 without a hearing.

## **LEGAL STANDARD**

To obtain relief under 28 U.S.C. § 2255, a petitioner in federal custody must show that his sentence (1) was imposed in violation of the United States Constitution or the laws of the United States; (2) was entered by a court without jurisdiction to impose the sentence; (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack. Such collateral attack "is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). As the Second Circuit has explained, "[t]he reasons for narrowly limiting the relief permitted under § 2255 – a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place – are 'well known and basic to our adversary system of justice.'" Bokun, 73 F.3d at 12 (quoting United States v, Addonizio, 442 U.S. 178, 184 (1979)).

To prove ineffective assistance of counsel, a defendant must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's

allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (citations omitted) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). Failure to satisfy either prong is fatal. Strickland, 466 U.S. at 697. The Supreme Court advised, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

"Ineffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." Peoples v. United States, 403 F.3d 844, 848 (7th Cir 2005), citing Bell v. Cone, 535 U.S. 685, 697 (2002). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Rompilla v. Beard, 545 U.S. 374 (2005). "It is therefore only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." Strickland, 466 U.S. at 711.

## SUMMARY OF ARGUMENT

Mr. Foti had no responsibility to file a Notice of Appeal because Russell never directed him to do so. Russell's motion fails because the allegations he sets forth in this regard, through Ms. Daniel's biased affidavit, are clearly refuted by the sworn facts in Mr. Foti's declaration. Docket 148. Next, Russell's trial counsel, Mark Foti, Esq., was not deficient in his performance advising Russell in this matter. He properly counseled the defendant in advance of the Plea Agreement, including on the application of the Sentencing Guidelines, the terms and consequences of the Plea Agreement, and the appellate waiver within the Plea Agreement. Further, the alleged failures by defense counsel were not prejudicial, because

even if true, they were remedied by the Court's own thorough Rule 11 plea colloquy with Russell on July 26, 2018 when the pleas of guilty were entered. Russell alleges that his trial counsel rendered ineffective assistance of counsel for two distinct reason and this response will address each of his claims in turn. Docket 132.

I.  **Russell Has Not Demonstrated that He Ever Advised Mr. Foti to File a Notice of Appeal**

In his motion, Russell complains that his defense counsel was deficient by failing to file a Notice of Appeal as directed. Docket 132. The government acknowledges that "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (*e.g.*, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). "[A] lawyer who disregards specific instructions from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Regalado v. United States, 334 F.3d 520, 524-25 (6th Cir. 2003). Where counsel fails to file an appeal after being timely instructed to do so, a defendant is ordinarily entitled to a delayed appeal, regardless of whether such an appeal would be meritorious. Roe, 528 U.S. at 477.

Notwithstanding the appellate waiver in the Plea Agreement, Docket 89 at ¶¶ 21-22, Russell maintains he wanted to appeal and that his 5th and 6th Amendment rights were violated when "Mr. Mark A. Foti, agreed to file an appeal, but through neglect [] failed to do so." Docket 132, p. 4. For his part, Mr. Foti swears that Russell never directed him to file an appeal, they never discussed any potential issues that could be pursued on appeal, and that

no one contacted him on Russell's behalf to direct that a Notice of Appeal be filed.   Docket 148.

To begin, the government observes that even now in his § 2255 motion, Russell does not state expressly what issue he asked Mr .Foti to pursue on appeal.   In light of Mr. Foti's declaration, Russell's account of communications between Ms. Daniel and Mr. Foti should be rejected as incredible.   Mr. Foti asserts in his declaration that his secretary does not have any memory of the conversation Ms. Daniel describes.   Further, his own review of his office's telephone logs reveals that Ms. Daniel's telephone number did not contact his office during the period she swears she directed the filing of an appeal on Russell's behalf, nor did any number with the same out-of-state area code (919).   Had Russell wished to file a Notice of Appeal, his frequent and candid *pro se* correspondence demonstrates that he was not shy to advocate on his behalf.   <u>See</u> <u>e.g.</u> Docket 155, p. 11 (letter following up in pursuit of a records request).   It is incredible that Russell would not have called Mr. Foti or written a letter himself, in favor of relying on a third-party to transmit this essential directive.   Ms. Daniel asserts that she made her phone call to Mr. Foti's office on February 12, 2019, four days after the sentencing.   Then, 13 more days passed between February 12, 2019 and February 25, 2019 when the final judgment was issued and filed on the docket.   Then 14 more days passed between when the judgment was entered and when Russell's right to appeal expired.   The required timing for filing a Notice of Appeal was a fact Russell was advised of by the Court at sentencing, consistent with its statutory obligation. FED. R. CRIM. PRO. 32(j)(1)(B); Docket 135, p. 48.   And yet, over those 27 days, Russell has alleged his first and only effort to contact Mr. Foti was made by his fiancé through a message left with a secretary.   Even having received no call back from Mr. Foti, Russell has not alleged he persisted with additional phone calls, letters, or other conversations wherein his directive to file a Notice of

Appeal was communicated. It is more probable he did not pursue this with Mr. Foti with the same zeal he has pursued every other aspect of this case because, in fact, he never pursued it at all.

Curiously too, although Russell claims his directive was acknowledged by Mr. Foti and that he agreed to file the appeal, Docket 132, p. 4, Ms. Daniel's affidavit states only that she left a message containing the directive with Mr. Foti's secretary. Docket 132, p. 12. Ms. Daniel's affidavit does not assert that she ever spoke directly with Mr. Foti, nor that he acknowledged to her he received Russell's directive, nor that Mr. Foti actually agreed to file the appeal as Russell claims. Id. This inconsistency signals a lack of credibility in Russell's assertions about Mr. Foti having acknowledged Russell's directive and having agreed to file the appeal.

Should this Court determine that Russell did instruct Mr. Foti to file a Notice of Appeal, the appropriate remedy is not to vacate or set aside the sentence, but instead allowance to pursue a delayed appeal. Campbell v. United States, 686 F.3d 353, 360 (6th Cir. 2012) ("[E]ven when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal.").

II. **Russell Knew, Understood, and Agreed to the Application of Guidelines § 2D1.1(B)(1) When He Entered the Plea Agreement**

In his motion, Russell complains that his defense counsel was deficient by "deliberately fail[ing] to 'object' to the dangerous weapon enhancement under U.S.S.G.

§ 2D1.1(b)(1)." Docket 29, p. 5. The terms of the Plea Agreement, however, specifically foreclosed this option and established that Russell admitted to his possession of a handgun, and that he agreed that § 2D1.1(b)(1) applies. Docket 89, ¶¶ 8(a); 14. At the plea colloquy, the government summarized his criminal conduct to include,

> "As part of and at varying times during the conspiracy, the defendant and coconspirators possessed dangerous weapons including firearms for protection and other purposes in furtherance of the conspiracy. In particular, during a prior controlled transaction for controlled substances in May of 2014, the defendant was seen by the FBI source in possession of a handgun."

Docket 138, p. 34. When asked by the Court, "[i]s everything [the government] said about your conduct true and correct?," the defendant responded unequivocally, "[y]es, your honor." Id. After the government described how it would prove its case by stating, among other things, "the FBI source would be asked to describe the transaction on at least one occasion in May of 2014 when the source saw the defendant in possession of a handgun during the transaction," the Court asked the defendant, "[d]o you disagree with anything [the government] just said?," to which the defendant responded "[n]o, Your Honor." Id. at 35-36. Moreover, Mr. Foti's declaration makes clear that he discussed the § 2D1.1(b)(1) enhancement with Russell, and that Russell decided to enter the plea realizing that it was part of the Plea Agreement. Docket 148, p. 3. None of the *pro se* correspondence by Russell to the Court, including a letter to United States Probation Officer Natalie Whitman (Docket 155, pp. 12-15), mentions an objection to the application of § 2D1.1(b)(1).[2] As Mr. Foti observes, "I can confidently say that Mr. Russell was aware of which objections I would

---

[2] The government notes that several of the items of correspondence are not legible as uploaded on the docket.

ultimately raise with Probation and the Court, and that was not one of the objections we had discussed." Docket 148, p. 3.

Even if the Court credits that Russell raised the objection with Mr. Foti prior to the Plea Agreement, Russell had every opportunity to state his objection and choose not to enter the Plea Agreement. No one required him to admit to those facts. He did so freely and voluntarily and in the company of his attorney. If the Court alternatively credits that Russell raised the objection with Mr. Foti after the Plea Agreement, filing an objection to the PSR's application of § 2D1.1(b)(1) would have constituted a breach of the Plea Agreement. Given the government's statement of the proof, and the Probation Office's findings in the PSR, Russell has not demonstrated any likelihood that he would have prevailed on such an objection. It would not have been in his interest to jeopardize the benefits he secured through entering a Plea Agreement in pursuit of an improved Guidelines range,[3] which is discretionary.

Russell was not deprived of effective assistance of counsel because Mr. Foti and this Court made clear that by entering the Plea Agreement, he was admitting to having possessed a firearm and agreeing to the application of § 2D1.1(b)(1). Russell has given this Court no reason to believe that Mr. Foti, a well-respected and experienced member of the CJA panel of attorneys, neglected his responsibility to notify and educate Russell on all of the terms of the Plea Agreement and to ensure he understood them. Even if Court has concern that Mr. Foti failed somehow to act – to negotiate a different plea which did not include an agreement to the application of § 2D1.1(b)(1), or to file an objection – Russell did not suffer prejudice

---

[3] If Russell had prevailed, the improved Guidelines range would have been 84 to 105 months, just 3 months shy of including the actual sentence imposed by the Court.

because the evidence supporting the application of the enhancement was, and remains, strong.

Russell complains more generally that he entered a guilty plea "due to the erroneous misadvice of trial counsel [w]ho failed to clearly go over each aspect of the written plea agreement." Docket 132, p. 1. Based on Mr. Foti's declaration, it is clear that he was attentive to Russell as a client – having visited him in jail, having answered questions about the PSR, and then proactively advocating for revisions to the PSR with the US Probation Office based on Russell's requests. See Docket 155 at pp. 31-34. Russell's broad and unsupported accusation that Mr. Foti did not go over the Plea Agreement with him is contradicted by Russell's sworn statement to the Court on the date of his plea.

> **COURT**: Mr. Russell, have you spoken with your lawyer about the charges against you, about your rights, about the proposed plea agreement, and about your options?
>
> **RUSSELL:** Yes, Your Honor.
>
> **COURT:** Are you satisfied with the advice and counsel that you've received from him?
>
> **RUSSELL:** Yes, Your Honor.

Docket 138, p. 9. Then after being advised of his rights, as required by the Constitution and by Rule 11, the defendant indicated he understood his rights, including the right to persist in his plea of "not guilty," that he had no questions about those rights, and that he did not need any additional time to speak to his lawyer. Id. at pp. 12-14. Russell has not presented any evidence that should cause this Court doubt as to the truth of those sworn statements.

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's § 2255 motion and requested relief.

DATED:   Buffalo, New York, July 15, 2020.

                                        JAMES P. KENNEDY, JR.
                                      United States Attorney

BY:   *s/LAURA A. HIGGINS*
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York   14202
       (716) 843-5862
       Laura.Higgins@usdoj.gov