UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LAWRENCE RUSSELL,

                Petitioner,

       v.

UNITED STATES OF AMERICA,

                Respondent.

_____

                19-CV-1126
                19-CV-1127
                17-CR-40
                18-CR-105
                DECISION & ORDER

Pending before this Court is *pro se* petitioner Lawrence Russell's motion to vacate his sentence under 28 U.S.C. § 2255. Docket Items 132 (17-CR-40) and 29 (18-CR-105).[1] For the following reasons, the matter is referred to United States Magistrate Judge Jeremiah J. McCarthy, under 28 U.S.C. §§ 636(b)(1)(A) and (B), to hold an evidentiary hearing and resolve the factual issue of whether Russell instructed his attorney to appeal or to determine whether Russell is entitled to a delayed appeal for some other reason. Russell's motion is otherwise denied.

## BACKGROUND

On July 26, 2018, Russell pleaded guilty to Count 1 of the indictment in 17-CR-40, which charged a violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of cocaine and 28 grams or more of cocaine base), and Count 1 of the indictment in 18-CR-105, which charged a violation of 18 U.S.C. § 3146(a)(1) (failure to appear after pre-trial release). *See* Docket Item 138

---

[1] All citations are to the criminal docket in 17-CR-40 unless otherwise noted.

(plea transcript).  Before pleading guilty, Russell signed a written plea agreement in which he and the government agreed that Russell's "sentencing range" under the United States Sentencing Guidelines ("Guidelines") "would be a term of imprisonment of 100 to 125 months, a fine of $25,000 to $5,000,000, and a period of supervised release of 4 to 5 years."  Docket Item 89 at ¶ 13.  As part of that agreement, Russell explicitly acknowledged that a two-level enhancement applied under section 2D1.1(b)(1) of the Guidelines (possessing a dangerous weapon).  *Id.* at ¶ 8a.  Russell also explicitly waived his right to appeal or collaterally attack his conviction as well as a sentence within the Guidelines range.  *See* Docket Item 138 at 49; Docket Item 89 at ¶¶ 21-22.

On February 8, 2019, this Court accepted the plea agreement and sentenced Russell within the Guidelines range: 108 months' imprisonment, no fine, and 5 years' supervised release.  Docket Item 135.  The Court entered judgment on February 25, 2019.  Docket Item 118.  Russell did not appeal his conviction or sentence.

On August 23, 2019, however, Russell moved to set aside, vacate, or correct his sentence under 28 U.S.C. § 2255.  Docket Item 132.[2]  On July 15, 2020, the government responded, Docket Item 158, and on November 3, 2020, Russell replied, Docket Item 168.  On April 30, 2021, Russell submitted a supplemental letter in support of his motion.  Docket Item 176.

---

[2] On October 11, 2019, the government moved for an order finding that Russell waived the attorney-client privilege and compelling the production of correspondence from Russell's attorney, Mark A. Foti, Esq.  Docket Item 136.  On March 10, 2020, this Court granted that motion and ordered Foti to respond to Russell's allegations, Docket Item 145; on April 3, 2020, Foti submitted a sealed declaration, Docket Item 148.

**DISCUSSION**

Russell seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  A court may dismiss a section 2255 petition without first conducting a hearing if the petition and record "conclusively show" that the petitioner is not entitled to the relief that he seeks.  *Id.* § 2255(b).

In his motion, Russell asks the Court to vacate his sentence because his attorney provided ineffective assistance to him.  More specifically, Russell argues that attorney Foti was ineffective in (1) "failing to file a timely [n]otice of [a]ppeal" and (2) "failing to object to the dangerous-weapon enhancement under [section] 2D1.1(b)(1)."  Docket Item 132 at 4.  The government responds that Russell's motion is barred by the waiver in his plea agreement and that, in any event, his counsel was not ineffective.  Docket Item 158.

I.    **APPEAL/COLLATERAL ATTACK WAIVER**

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable."  *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016).  Such waivers "are applicable to issues arising subsequent to the plea agreement."  *United States v. Haynes*, 41 2 F.3d 37, 38 (2d Cir. 2005).  "[E]ven when a defendant waives all or most of his right to appeal [or collaterally attack his conviction]," however, "an attorney who fails to file an appeal that a criminal

3

defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal." *Campell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012); *see also Campusano v. United States*, 442 F.3d 770, 776-77 (2d Cir. 2006).

In the plea agreement here, Russell agreed to waive the following rights:

> The defendant understands that Title 18, United States Code, Section 3742[,] affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

> The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

Docket Item 89 at ¶¶ 21-22 (paragraph numbers omitted).

During the plea colloquy, the Court ensured that Russell understood that and more:

> THE COURT: Let's look at your right to appeal in paragraph[s] 21 to 23 of the agreement. Do you understand that by entering into this agreement and entering pleas of guilty, you're giving up your right to appeal or collaterally attack your convictions?

> [RUSSELL]: Yes, Your Honor.

> THE COURT: Do you understand that you're also giving up your right to appeal or collaterally attack all or part of the Court's sentence, as long as that sentence is within or less than the [G]uidelines range that's noted in paragraph 13? And that means a term of imprisonment of up to 125 months, that's ten years and five months, a fine of up to $5 million, a period of supervised release of up to five years, and a

required special assessment of $100 for each charge for a
total of $200; do you understand that?

[RUSSELL]:        Yes, Your Honor.

Docket Item 138 at 49.

Russell now argues, despite his explicit waivers, that Foti was ineffective
because he did not timely appeal or object at sentencing to the dangerous-weapon
enhancement to which he had agreed.  Docket Item 132 at 4.  The argument that Foti
did not object to the dangerous-weapon enhancement is barred by the waiver in
Russell's plea agreement as reinforced by the Court during the plea colloquy.[3]  Russell
may be entitled to a delayed appeal notwithstanding his waiver, however, if he indeed
asked Foti to file a notice of appeal and Foti did not do so.  *See Campell*, 686 F.3d at
360; *Campusano*, 442 F.3d at 776-77.  The submissions by Russell and Foti create a
clear issue of fact in that regard.  *Compare* Docket Item 132, *with* Docket Item 148.
Therefore, the Court refers this matter to Judge McCarthy to conduct an evidentiary
hearing and resolve the factual issue of whether Russell instructed Foti to appeal or to
determine whether Russell is otherwise entitled to a delayed appeal.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Court liberally construes Russell's motion to argue that Foti also was
ineffective in failing to adequately explain the Guidelines to him during the plea-

---

[3] Regardless, Foti's failure to object to the enhancement was not ineffective
assistance.  As part of the plea agreement, Russell explicitly agreed to the two-level
increase under Guidelines section 2D1.1(b)(1) for possessing a dangerous weapon, as
well as to the factual basis for that increase.  *See* Docket Item 89 at ¶¶ 5e, 8a (plea
agreement); Docket Item 138 at 34, 42-43 (plea colloquy).

negotiation process.  More specifically, in his reply,[4] Russell says that Foti was

ineffective because Foti did not explain that the two-level sentencing enhancement for

possessing a dangerous weapon "was 'advisory' and not 'mandatory.'"[5]  Docket Item

168 at 15.  And he says that "there[ is] a reasonable probability that had he been aware

[that the enhancement was advisory], he would not have plead[ed] guilty to a

discretionary sentencing enhancement [sic]" because he did not possess a firearm.  *Id.*

at 16, 19.

        A defendant who has waived his right to appeal and collaterally attack his

conviction and sentence still may raise an ineffective assistance of counsel claim

"challenging 'the constitutionality of the *process* by which he waived [his rights].'"  *Parisi*

*v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (emphasis and alteration in original)

(quoting *United States v. Hernandez,* 242 F.3d 110, 113 (2d Cir. 2001)); *see also United*

*States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty

plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that

---

        [4] Ordinarily, the Court would not consider an argument made for the first time in
reply.  But because Russell is proceeding *pro se*, the Court considers his argument on
the merits.  *See Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(citations and emphasis omitted) ("[S]ubmissions of a *pro se* litigant must be construed
liberally and interpreted 'to raise the strongest arguments that they suggest.'" ).

        [5] Russell repeatedly argues that he did not know that the "sentencing
enhancement" was "discretionary."  *See, e.g.*, Docket Item 168 at 1, 7, 16-19.  But the
enhancement was neither advisory nor mandatory; instead, it was part of the Guidelines
calculation in the plea agreement to which Russell agreed.  Because it makes no sense
to say that the "enhancement" was "discretionary" or "advisory," Russell may be
confusing the application of the enhancement (to which he agreed in his plea
agreement and about which the presentence report agreed as well) with the advisory
nature of the Guidelines range.  In any event, the Court considers his argument liberally
and understands Russell to say that he did not know that any increase in his sentencing
range due to the enhancement was advisory and not mandatory.

he received constitutionally ineffective assistance of counsel during his plea

proceedings"), *cert. denied*, 140 S. Ct. 55 (2019).  That is because "challenging the

attorney's *advice* about [the defendant's] bargaining position . . . connect[s] the knowing

and voluntary nature of the defendant's plea decision with the attorney's conduct."

*Parisi*, 429 F.3d at 139 (emphasis in original).

    To succeed on a claim of ineffective assistance of counsel, a defendant must "(1)

demonstrate that his counsel's performance 'fell below an objective standard of

reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove

prejudice' arising from counsel's allegedly deficient representation."  *United States v.*

*Cohen,* 427 F.3d 164, 167 (2d Cir. 2005) (citations omitted) (quoting *Strickland v.*

*Washington,* 466 U.S. 668, 688 (1984)).

    Under the first prong, there is a "strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at

689.  The petitioner may overcome this presumption by showing "that counsel's

representation was unreasonable under prevailing professional norms and that the

challenged action was not sound strategy."  *Kimmelman v. Morrison*, 477 U.S. 365, 381

(1986); *Strickland*, 466 U.S. at 689.  In considering whether counsel "failed to exercise

the skills and diligence that a reasonably competent attorney would provide under

similar circumstances," *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996), courts look to

the totality of the circumstances, are "highly deferential," and make "every effort . . . to

eliminate the distorting effects of hindsight," *Strickland*, 466 U.S. at 688-89.

    Under the second prong, the petitioner must show "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694.  "A reasonable probability" is "a probability sufficient to undermine confidence in the outcome," *id.*, including "the overall integrity of the proceeding," *Santiago-Diaz v. United States*, 299 F. Supp. 2d 293, 300 (S.D.N.Y. 2004).  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'  Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations omitted) (quoting *Strickland*, 446 U.S. at 687, 693).

Russell's argument here—that he did not know that the two-level enhancement (and, presumably, any resulting increase in his sentencing range) was advisory and not mandatory—fails for several reasons.  First, it makes no difference: if the enhancement were mandatory and not advisory—that is, if Russell were required to agree to it and the Court were required to apply it—the result would be no different because the enhancement was, in fact, agreed to and applied.[6]  Even worse, the argument makes no sense.  "Advisory" is better than "mandatory" for a defendant when the adjustment at issue is an "enhancement" that increases the defendant's Guideline range.  So it makes no sense to say that Russell would not have pleaded guilty if he knew that the enhancement was only advisory and not mandatory.[7]

---

[6] Moreover, the enhancement was supported by the facts—facts that Russell explicitly admitted, *see* Docket Item 89 at ¶¶ 5e, 8a (plea agreement); Docket Item 138 at 34, 42-43 (plea colloquy)—and therefore included in both the presentence report's and the Court's Guidelines calculation, *see* Docket Item 111 at 10 (presentence report); Docket Item 135 at 21, 43 (sentencing transcript).

[7] Similarly, Russell argues that because the Guidelines "are discretionary [and] not mandatory, they have no place inside of a plea agreement."  Docket item 132 at 9.  But the Second Circuit has encouraged the government to include the Guidelines range in plea agreements and thus to make sure that defendants know "prior to [their] accepting plea agreements, as to the likely range of sentences that their pleas will authorize."  *See United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991).  Doing

And even if there were some merit to that argument, it is clear from the record that Russell knew very well that the Guidelines, including any increase in his sentencing range because of the enhancement at issue, are advisory. Although Foti's declaration does not address whether he discussed the advisory nature of the Guidelines with Russell, the plea agreement that Russell signed stated in two separate places that Russell understood that the Guidelines were discretionary and not binding on the Court.[8] *See* Docket Item 89 at ¶ 6 ("The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines."); *id.* ¶ 15 ("The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement."). During the plea colloquy, Russell explicitly acknowledged that the Court was not a party to the plea agreement or bound by its terms. Docket Item 138 at 16. In addition, he swore that he had read the entire plea agreement, discussed it with Foti, understood it, and agreed with everything in it. *Id.* at 15-16. Russell also swore—twice no less—that he was satisfied with the advice and counsel of his attorney. *Id.* at 9, 53.

And even if Foti did not explicitly tell Russell that any increase in his Guidelines range due to the sentencing enhancement was "'advisory' and not 'mandatory,'" Docket

---

so ensures that defendants can "fully appreciate the consequences of their plea" and are not surprised by the eventual sentence imposed. *Id.* at 1032-34.

   [8] Foti submitted a declaration stating that he and Russel discussed the sentencing enhancement "prior to [Russell's] entering into the plea" and that Russell decided to enter into the plea agreement knowing that the enhancement would be applied. *See* Docket Item 148 at 3. Foti says that he "do[es] not recall" Russell's asking him to object to the sentencing enhancement but that he "can confidently say that [] Russell was aware of which objections" he would raise. *Id.* Of course, that is a moot point because any objection would have been futile in light of the plea agreement.

Item 168 at 15, Russell still would not be entitled to relief because of the ineffective assistance of counsel.  That is so because this Court ensured that Russell understood that the Guidelines were not mandatory.  So even if Foti's failure to explicitly discuss the advisory nature of the Guidelines were objectively unreasonable, any deficiency on Foti's part could not possibly have prejudiced Russell in any way.  *See Strickland*, 466 U.S. at 694.

For example, when the Court began discussing the Guidelines with Russell, it asked whether Russell understood that "[a]lthough the Court must consider the [G]uidelines, they are just advisory and [the] Court is not bound to follow them when determining your sentence."  Russell answered, "Yes, Your Honor."  Docket Item138 at 40.  Later, when discussing the Guidelines calculation, the Court and Russell had the following colloquy:

> THE COURT:    Okay. Now in paragraph 6 to 15 of the agreement, you and the government have agreed to some [G]uidelines calculation[s], and in paragraph 13 you've agreed to an understanding about a [G]uidelines range.  Specifically[,] [you and] the government have agreed that the [G]uidelines would call for a sentence of 100 months to 125 months of imprisonment, that means eight years and four months to ten years and five months, plus a fine of between $25,000 and $5 million, plus a period of supervised release of four to five years, plus the special assessment of $100 on each count for a total of $200; do you understand that?

> [RUSSELL]:    Yes, Your Honor.

> THE COURT:    And do you understand that the Court can accept that calculation, but that the Court can also reject that calculation and find a [G]uidelines calculation of its own?

> [RUSSELL]:    Yes, Your Honor.

> THE COURT:    And do you understand that regardless of the [G]uidelines

> calculation, even my own calculation, I still have the discretion to impose a sentence that's more severe or less severe than the [G]uidelines range as long as the sentence is not above the statutory maximum or below the mandatory minimum?

[RUSSELL]:      Yes, Your Honor.

THE COURT:      So in other words, do you understand that the Court can sentence you up to a sentence -- or, to a sentence up to the maximum penalties that we discussed earlier?

[RUSSELL]:      Yes, Your Honor.

THE COURT:      And do you understand you're not going to be able to withdraw your guilty plea based on the sentence that I impose?

[RUSSELL]:      Yes, Your Honor.

*Id.* at 44-46.

What is more, the Court addressed the precise Guideline enhancement about which Russell now takes issue, making sure that he understood its application:

THE COURT:      And do you understand that while you're not charged with a weapons offense, it wasn't even charged, you're agreeing that your offense level be increased by two levels because you possessed a dangerous weapon?

[RUSSELL]:      Yes, Your Honor.

*Id.* at 42-43.  And that is in addition to Russell's explicit admission that he and his coconspirators "possessed dangerous weapons including firearms for protection and other purposes in furtherance of the conspiracy" and that he himself "was seen by the FBI source in possession of a handgun."[9]  *Id.* at 34.  So even if Foti had not met his

_____

[9] Indeed, the "factual basis" section of the plea agreement stated:

As part of and at varying times during the conspiracy, the defendant and co-conspirators possessed dangerous weapons, including firearms, for

obligation to ensure that Russell understood the advisory nature of the Guidelines, that failure was of no moment.

Read liberally, Russell's motion also suggests that he pleaded guilty because he did not fully understand the Guidelines and the consequences of his plea. But that argument also is belied by the plea colloquy. In fact, the Court inquired about the plea agreement in great detail, ensuring that Russell understood and agreed with everything in it. Russell confirmed that he did—twice:

> THE COURT:   Did you read the plea agreement that you signed and discuss it with your lawyer before you signed it?
>
> [RUSSELL]:   Yes, Your Honor.
>
> THE COURT:   Do you understand and agree with everything in the agreement?
>
> [RUSSELL]:   Yes, Your Honor.
>
> THE COURT:   Do you have any questions about it?
>
> [RUSSELL]:   No, Your Honor.
>
> THE COURT:   Do you want any more time to talk to your lawyer about it?
>
> [RUSSELL]:   No, Your Honor.
>
>                               \*   \*   \*
>
> THE COURT:   Mr. Russell, is the plea agreement that we've been going over the complete agreement between you and the government?
>
> [RUSSELL]:   Yes, Your Honor.

---

protection and other purposes in furtherance of the conspiracy. In particular, during a prior controlled transaction for controlled substances in May 2014, the defendant was seen by the FBI source in possession of a handgun.

Docket Item 89 at ¶ 5e.

12

> THE COURT:     Did you review the entire agreement with your lawyer?
>
> [RUSSELL]:     Yes, Your Honor.
>
> THE COURT:     Do you understand and agree with everything in it?
>
> [RUSSELL]:     Yes, Your Honor.

Docket Item 138 at 15-16, 50.

Russell said—twice—that he was satisfied with his attorney.  *Id.* at 9, 53.  His attorney confirmed that he discussed every paragraph of the plea agreement with Russell; that they addressed all the discovery the government provided and any defenses that might be raised; and that they both agreed that the best course to follow was the agreement that they reached with the government.  *Id.* at 51-52.  There can be no doubt that both Russell and his counsel confirmed that Russell knowingly, voluntarily, and intelligently agreed to the plea agreement offered by the government.

Russell's plea colloquy with this Court was not a "mere formality" but a "grave and solemn act."  *United States v. Arteca*, 411 F.3d 315, 319 (2d Cir. 2005) (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997) (internal quotation marks omitted)). His statements under oath at the plea colloquy are presumed to be true "and are generally treated as conclusive in the face of [a] later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999).  For that reason, a district court may rely on a defendant's acknowledgment under oath "that he understood the consequences of his plea, had discussed the plea with his attorney, [and] knew that he could not withdraw his plea."  *United States v. Carreto*, 583 F.3d 152, 157 (2d Cir. 2009) (internal citation omitted).  Russell's naked assertions that he did not understand the Guidelines and the consequences of his plea therefore are insufficient to overcome his repeated statements, under oath, to the contrary.

13

In sum, Russell cannot meet either prong of the test for ineffective assistance of counsel during the plea-negotiation, plea, and sentencing processes.  His lawyer was not ineffective.  And even if he had been, that ineffectiveness would not have prejudiced Russell in any way.

## **CONCLUSION**

For the reasons set forth above, Russell's motion to vacate his sentence under 28 U.S.C. § 2255, Docket Items 132 (17-CR-40) and 29 (18-CR-105), is DENIED in part and DECISION IS RESERVED in part.  The matter is referred to Judge McCarthy to address the issues of whether Russell instructed Foti to appeal and whether Russell is entitled to a delayed appeal.  Russell's motion is otherwise denied.


SO ORDERED.

Dated:   June 1, 2021
         Buffalo, New York



_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE